UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 20-106 |
| RYAN P. MULLEN AND<br>DUANE A. DUFRENE | SECTION: "H" |

## ORDER AND REASONS

Before the Court is the imposition of restitution owed by Defendants Ryan Mullen and Duane Dufrene.

## BACKGROUND

Defendants Ryan Mullen ("Mullen") and Duane Dufrene ("Dufrene") pleaded guilty to one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Defendants repeatedly effectuated a scheme wherein Dufrene, through his corporate entities, would purchase a property at a fair price. Then, Mullen, through his corporate entities, would obtain a loan to purchase the property from Dufrene. Unbeknownst to the lender, Defendants were using fraudulent documentation to inflate the purchase price for the subject property and obtain a loan millions of dollars more than the

1

price paid in the first transaction. Defendants would then use the loan meant for the second transaction to pay for the first, pocketing the excess.

In March 2024, the Court sentenced Mullen and Dufrene, ordering restitution to Keesler Federal Credit Union ("Keesler") and Red Oak Capital Group, LLC ("Red Oak") pursuant to the Mandatory Victim Restitution Act. On January 29, 2025, the Court held a hearing on the issue of restitution, at which the Government called one witness, Paul Cleary, the President and COO of Red Oak. At the hearing, the Court ordered the parties to file supplemental briefing on the issue of restitution.

## **LEGAL STANDARD**

The Mandatory Victim Restitution Act ("MVRA") applies in all sentencing proceedings for convictions of "an offense against property under this title, . . . including any offense committed by fraud or deceit."[1] The MVRA provides that restitution shall be awarded "to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."[2] The Fifth Circuit has held that "[t]he MVRA limits restitution to the actual loss directly and proximately caused by the defendant's offense of conviction" and "every dollar must be supported by record evidence."[3] The Government bears the burden of proving the amount of the victims' losses by a preponderance of the evidence.[4]

---

[1] 18 U.S.C. § 3663A(c)(1)(A)(ii).
[2] 18 U.S.C. § 3664(f)(1)(A).
[3] United States v. Beacham, 774 F.3d 267, 279 (5th Cir. 2014).
[4] 18 U.S.C. § 3664(e).

## LAW AND ANALYSIS

As part of their sentences, Mullen and Dufrene stipulated to jointly and severally owing restitution to Keesler in the amount of $1,824,109.68.[5] Dufrene further agreed to restitution up to $1 million owed to Red Oak jointly and severally with Mullen, leaving Mullen responsible for any excess amount due to Red Oak.[6] Thus, the sole question before the Court is the amount of restitution owed to Red Oak by Defendant Ryan Mullen pursuant to the Mandatory Victim Restitution Act.

The Government argues Red Oak is entitled to $1,974,119.06 in total restitution. The Government's calculation includes $122,377.05 in legal fees, $1,470,753.38 in carrying costs, and $380,988.63 for costs Red Oak's representative incurred for management of the properties after seizure.[7] Mullen has agreed to stipulate to restitution for Red Oak, limited to the amounts it expended getting, maintaining, and improving the property for sale, but argues the total amount owed should be offset by funds Red Oak held in capital reserve accounts for these transactions.[8]

Paul Cleary, the government's sole witness detailed the legal fees Red Oak incurred to oppose bankruptcies filed by ONRD, Inc, one of Mullen's corporate entities involved in the scheme. The Court accepts Mr. Cleary's testimony as credible and finds that Red Oak suffered actual losses—caused by the Defendants' offensive conduct—in the amount of $122,377.05 for legal

---

[5] Doc. 244 at 3.
[6] *See* United States v. Gozes-Wagner, 977 F.3d 323, 346 (5th Cir. 2020) ("[T]here is no doubt that [the district court] had the authority to hold [defendant] jointly and severally liable . . . .").
[7] Doc. 244 at 1.
[8] Doc. 245.

3

fees. The Court, after reviewing the record, accepts the government's values as to the $1,470,753.38 in carrying costs and the $380,988.63 for Red Oak's representative's costs, including amounts Red Oak expended to maintain and operate the property. In total, Red Oak expended $1,974,119.06, with $603,624.99 being sourced from the capital reserve accounts and $1,370,494.07 being "new" money Red Oak spent.[9]

The Court, however, agrees with Mullen that the amount of restitution owed should be offset by the value held in capital reserve accounts. The funds held in reserve escrow are monies Defendants borrowed but were never used by or paid out to Defendants. Red Oak retained control of these funds and ultimately used them to pay for legal fees, carrying costs, and owner's representative's costs. Ordinarily, the value of the capital reserve accounts would factor into the calculation of Red Oak's losses, namely the difference between the loaned amounts and the value of the properties returned for sale.[10] Defendants would therefore be entitled to offset the fraudulent loan balances by the amounts retained by Red Oak to calculate the value of the property returned.[11] But, by "authoriz[ing] the government to proceed with only seeking the legal fees and carrying costs/expenses," the Government has opted not to introduce evidence of the difference between "the value of the property on the date of sentencing" and "the value (as of the date the property is returned) of any part of the property that is returned."[12] Without evidence supporting Red

---

[9] Doc. 244 at 21.

[10] *See* Robers v. United States, 572 U.S. 639, 641 (2014) ("[T]he specific property lost by a victim, which, in the case of a fraudulently obtained loan, is the money lent. . . . [A] sentencing court must reduce the restitution amount by the amount of money the victim received in selling the collateral . . . .").

[11] *Id.*

[12] Doc. 244 at 5; 18 U.S.C. § 3663A(b)(1)(B).

Oak's losses in property value, the Court must find that the Government has failed to demonstrate by a preponderance of the evidence that Defendants owe Red Oak the $603,624.99 once held in the capital reserve accounts. Given that the capital reserve account balances were used to pay Red Oak's expenses, the Court may only impose restitution for the "new" money Red Oak expended—$1,370,494.07. Accordingly, the Court finds that Defendants are entitled to a credit of $603,624.99 that Red Oak held in the capital reserve accounts, and the total amount of restitution owed to Red Oak is therefore $1,370,494.07. As Dufrene has agreed to stipulate to jointly and severally owing the first $1 million with his co-defendant, the Court finds that Mullen is solely responsible for the remaining $370,494.07.

## **CONCLUSION**

For the foregoing reasons, the following restitution order is entered. An Amended Judgment reflecting the following shall issue separately.

**IT IS ORDERED** that Defendants Duane Dufrene and Ryan Mullen jointly and severally owe restitution in the following amounts:

- $1,824,109.68 to Keesler Federal Credit Union;
- $1,000,000.00 to Red Oak Capital Group, LLC;

**IT IS FURTHER ORDERED** that Defendant Ryan Mullen is ordered to pay restitution in the following amounts:

- $370,494.07 to Red Oak Capital Group, LLC;

Restitution is due and payable immediately and shall begin while the Defendants are incarcerated. Upon release, any unpaid balance shall be paid by Duane Dufrene at a rate of $150 per month. Likewise, upon release, any

unpaid balance shall be paid by Ryan Mullen at a rate of $150 per month. The payments are subject to increase or decrease, depending upon the defendant's ability to pay. The Court finds that Defendants do not have the ability to pay interest on the restitution. The Court will waive the interest requirement in this case.

Restitution payments shall be made to the Clerk, United States District Court, and are to be forwarded to the following address:

> U.S. CLERK'S OFFICE
> Attn: FINANCIAL SECTION
> 500 POYDRAS STREET
> ROOM C151
> NEW ORLEANS, LA  70130

The U.S. Bureau of Prisons, U.S. Probation Office and the U.S. Attorney's Office are responsible for the enforcement of this order.

New Orleans, Louisiana this 3rd day of November, 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**